# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:17SW 11
)
**Facebook User ID:100001710544968** )
More fully described in Attachment "A" )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

As described above and in Attachment "A"

located in the Eastern District of Virginia, there is now concealed *(identify the person to be seized or describe the property to be seized)*:

As described in Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code Section 922(u) | Unlawfully take or carry away from the premises of a person who is a federally licensed firearms dealer Any firearms in the licensee's business inventory that has shipped in interstate or foreign commerce. |

The application is based on these facts:

See Attached Affidavit

✓ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA: Angela Mastandrea-Miller /s/

_____
*Applicant's signature*

Michael Liptak ATF S/A
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 1, 2017

City and state: Richmond, Virginia

/S/ _____
David J. Novak
United States Magistrate Judge
*Judge's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100001710544968 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 3:17sw 11<br><br>**Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Michael Liptak, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for 15 years. In 2002, I completed basic criminal investigation training and ATF New Agent Training, both at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. During my career I have conducted and participated in ATF investigations concerning firearms trafficking, unlawful possession of firearms and explosives, narcotics trafficking, arson and contraband cigarette trafficking. I have been assigned

1

to the Richmond, Virginia Group 1 Field Office since 2001. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws and know that it is a violation of Title 18 United States Code, Section 922(u) for any person to steal or unlawfully take or carry away from the premises of a person who is licensed to engage in the business of dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce. Through my training, knowledge, and experience I am aware that firearms and narcotics traffickers use social media to contact other individuals regarding their crimes, and will often use social media as a way of selling or offering for sale fruits of their criminal activity. Such platforms of social media include, but are not limited to, Facebook, Twitter and Instagram. I know that individuals use multiple platforms to access social media which include cell phones, tablets, personal computers and video gaming consoles, among others. I know that many individuals use social media to contact others regarding crimes they have committed and/or crimes that they are planning.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge and information about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

**IDENTIFICATION OF THE FACEBOOK ACCOUNT TO BE EXAMINED**

4. https://www.facebook.com/profile.php?id=100001710544968 is a Facebook account that is stored at a premises owned, maintained, controlled, or operated by Facebook Inc., headquartered at 1601 Willow Road, Menlo Park, California 94025.

## RELEVANT STATUTORY PROVISIONS

5. Theft of Firearms from a Federal Firearms Licensee, and aiding and abetting same in violation of Title 18 U.S.C. § 922(u) and 2.

## PROBABLE CAUSE

6. The information in this affidavit is the result of a joint investigation conducted between the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Hanover County Sheriff's Office. All information contained in this affidavit is either based upon my personal knowledge and observations or that of other sworn law enforcement officers participating in this investigation. The information contained in this affidavit is submitted to support probable cause only and may not contain all information learned through this investigation.

7. On March 21, 2016 and April 15, 2016, Hopkins Gun and Tackle, 8151 Mechanicsville Turnpike, Mechanicsville, Virginia was burglarized. The owner, Vance Hopkins, reported the burglaries. On March 21, 2016, 10 firearms were reported stolen and on April 15, 2016, 22 firearms were reported stolen along with numerous boxes of ammunition.

8. On April 20, 2016, investigators spoke to a concerned citizen, hereafter referred to as CC1, who stated that the day prior, CC1 observed David ROSS looking at an ATF reward flyer bearing surveillance camera photos of the burglary/theft perpetrators and overheard ROSS say "I'm masked up, they can't tell it's me" and "I've got to get rid of these guns, I've gotten rid of some of them" and "I'm hot." CC1 also said he/she heard ROSS remark that he (ROSS) was afraid the firearm "Ki'Yel" WHITAKER was arrested with (on April 18, 2016) would be "traced back to me" (ROSS). CC1 added that ROSS often communicates on Facebook and posts photographs on that website using his true name.

3

9. On May 24, 2016, investigators spoke to a concerned citizen, hereafter referred to as CC2, about the recent burglaries to Hopkins Gun and Tackle. CC2 stated that Patrick MCGHEE Jr. came to a residence located in the City of Richmond, at approximately 0200 hours on April 16, 2016 (less than three hours after burglary/theft). CC2 reported that MCGHEE stated that he had just robbed a gun store and that MCGHEE then opened a duffle bag which contained multiple firearms. MCGHEE told CC2 that he had another gun that was too big to bring into the residence. CC2 stated that MCGHEE had laid out several firearms on a bed. CC2 took a photograph of the firearms and later emailed the photograph to Hanover County Investigator Brannagan. Your affiant has reviewed the photograph and has been able to determine that the four firearms in the photograph appear to be identical to several of the firearms that were reported stolen from Hopkins Gun and Tackle on April 15, 2016. CC2 stated that David ROSS met MCGHEE later that morning after the burglary/theft on April 15, 2016 and was given one of the stolen firearms by MCGHEE.

10. On June 15, 2016, investigators spoke to a concerned citizen, hereafter known as CC3, who stated that on or about May 26, 2016, CC3 met with ROSS and Rodney JACKSON (RJ) at ROSS's residence where ROSS told CC3 that "they" (believed by CC3 to be ROSS and RJ) had recently robbed a gun store on two prior occasions. ROSS and RJ showed CC3 the gun store by driving past Hopkins Gun and Tackle and pointing the location out to CC3. CC3 stated that ROSS said that there was another person who helped rob the gun store who was "snitching" and stated that the person was Patrick MCGHEE. According to CC3, ROSS and RJ shared photographs through social media, specifically Snapchat. These photographs were of ROSS and RJ posing with handguns.

11. On August 16, 2016, investigators spoke to a concerned citizen, hereafter identified as CC4, who stated that sometime around June 2016, CC4 met ROSS on the street near the

Fairfield Court area. CC4 stated that ROSS walked up to CC4 and lifted his (ROSS's) shirt to show CC4 two firearms that were tucked into ROSS's waistband. ROSS told CC4 that he had "hit a lick" and that the firearms had come from a gun store. This affiant has come to know that "hit a lick" is slang for stealing something, usually by means of robbery or burglary.

12. On September 20, 2016, investigators spoke to a concerned citizen, hereafter referred to as CC5, who stated that earlier in 2016, near the time of the Hopkins Gun and Tackle burglary/theft, CC5 was walking with ROSS in the Fairfield Court area of Richmond. ROSS lifted his shirt and showed CC5 two semi-automatic pistols which were tucked into ROSS's waistband. Later this same day, CC5 saw ROSS and ROSS stated that "he and his boys hit the gun store." CC5 remembered this as occurring within one or two days of CC5 seeing a television newscast about the Hopkins Gun and Tackle burglary/theft.

13. In July 2016, Hanover County investigators executed a State Search Warrant for the Facebook account of Patrick MCGHEE. Your affiant then received content from Facebook.com regarding MCGHEE'S Facebook account to include wall postings, status updates, uploaded photos and private messages. Your affiant reviewed private messages sent between MCGHEE and various individuals wherein MCGHEE makes statements regarding his possession of apparent stolen firearms and his subsequent attempts to sell them. There are also private messages between MCGHEE and ROSS between May 7, 2016 and July 7, 2016.

14. Conversations that occurred on MCGHEE'S Facebook account under the name of "BOTTOMLIFE PAT" on April 16, 2016, showed that MCGHEE sent "BULLET SANTIAGO" a private message stating, "Lls Nigga Hit a Crazy Lick." BULLET SANTIAGO responded, "Who u" and "What u get" MCGHEE then responded, "Some Shit My Nigga" and "CNt Talk About It On Here."

5

15. Conversation that occurred on April 16, 2016, under BOTTOMLIFE PAT showed what appears to be a phone conversation of a "Facetime" event from MCGHEE to MARK JONES in the early morning hours. Immediately following the call, JONES sent MCGHEE a private message stating, "Wat was that 38" and "Them joints sweet" and "He'll yea bro u better chill talking bout that shit bro on fb." MCGHEE responded, "Already I Delete Everything."

16. Conversation that occurred on MCGHEE'S Facebook (under QUANNYVILLE PAT) on July 6, 2016 showed that ROSS sent MCGHEE a private message stating, "U said I set u up bra." (This is referring to a shooting that occurred on April 16, 2016 when MCGHEE was shot and critically injured).

17. Conversation that occurred on MCGHEE'S same Facebook account on July 7, 2016, showed that MCGHEE sent ROSS a private message stating, "That's wat niggas telln me." ROSS responded, "Nah bra dats watchu tellin niggas bra tighten up fa I carry yo ass bra fuk I need to set u up fah Ian even kno u was comin round dea so how could I set u up bra."

18. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or

7

her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

24. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or

content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

30. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

31. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

9

33. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

34. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or

consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39. Based on the forgoing, I request that the Court issue the proposed search warrant.

40. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## **REQUEST FOR SEALING**

41. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this warrant, including the application, affidavit, and search warrant. Sealing these documents is necessary because the warrant is relevant to an ongoing criminal investigation. Based upon my training and experience I am aware that suspects actively search for criminal affidavits and search warrants via the internet, and disseminate them to others online, including associates and others as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may cause the targets of the investigation to destroy evidence, flee, or attempt to intimidate witnesses, thereby jeopardizing the ongoing investigation.

Respectfully submitted,

_____
Michael Liptak
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Subscribed and sworn to before me on 1st day of February, 2017, Richmond, Virginia

```
_____/S/_____
David J. Novak
United States Magistrate Judge
```

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information associated with the Facebook user ID: **100001710544968** that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered at 1601 Willow Road, Menlo Park, California 94025.

1

# ATTACHMENT B

## Items to be Seized

I. **Information to be disclosed by Facebook:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

1

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C § 922(U), steal or unlawfully take or carry away from the premises of a person who is licensed to engage in the business of dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce involving David ROSS from March 1, 2016 to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The theft or unlawfully taking or carrying away from the premises of a person who is licensed to engage in the business of dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the unlawfully taking or carrying away from the premises of a person who is licensed to engage in the business of dealing in firearms, any firearm in the

3

licensee's business inventory that has been shipped or transported in interstate or foreign commerce s, including records that help reveal their whereabouts.